### 9.  STRICKLIN & COMPANY *v.* CRAWLEY.

1. By the terms of the constitutional amendment creating the Court of Appeals, it is a court for correction of errors in law and in equity only. It has no jurisdiction whatever to consider errors of fact.
2. Where the issues of fact in a case have been fairly submitted, and the jury—the only proper tribunal—has found a verdict on those facts, and no error of law is disclosed, and the trial judge has approved the verdict, the judgment of the court below must stand affirmed.
3. It is unnecessary to prove a partnership unless it be specifically denied on oath.

Complaint, from city court of Waycross—Judge Myers. June 12, 1906.

Submitted January 8,—Decided January 11, 1907.

*J. H. Tipton, J. L. Sweat,* for plaintiffs in error.

*W. F. Crawley, J. L. Crawley, Leon A. Wilson,* contra.

RUSSELL, J. Crawley brought a suit in the city court of Waycross against Stricklin & Company, D. C. Stricklin & Co., on the following draft.

"$1000.00.                    Micanopy, Fla., 12, 8, 1899.

"At sight pay to the order of E. H. Crawley one thousand dollars, value received, and charge the same to the account of

.Stricklin & Company.

"To the Downing Company, Brunswick, Ga."

Upon the above the following indorsement appears: "Noted and protested for non-payment, December 11, 1899.

E. D. Walters, Notary Public, Glynn Co., Ga."

Only D. C. Stricklin was served. Upon the trial the jury rendered a verdict in favor of the plaintiff for the amount sued for. A motion for new trial, based upon the statutory grounds, was filed by the defendant. It was overruled, and thereupon a writ of error was sued out, assigning error upon the overruling of the motion. The defendants, in their answer to the petition, denied indebtedness, and denied that D. C. Stricklin was a member of the firm of Stricklin & Company. They further pleaded a total failure of consideration, though they admitted the execution of the draft in question and their refusal to pay the same. The answer was not sworn to. The defendants assumed the burden of proof. It was uncontradicted in the evidence, therefore, that the defendants made and delivered the draft sued upon, and there was no dispute that it was given in part payment of some interest or supposed interest in a certain tract of land, the appurtenances thereto belonging, the live stock and commissary or stock of merchandise, etc., known as the Coleman place. There was conflict as to who were to be included as partners in the purchase and also as to whether any written transfer of the plaintiff's interests was executed and delivered to. the purchasers. There was also conflict as to whether the plaintiff had any interest to convey. But upon every disputed point in the case, except as to partnership, and as to whether D. C. Stricklin was a member. of the firm of Stricklin & Company (the signers of the draft), the plaintiff's case was supported by substantial testimony which fully authorized the verdict. Having held, in *Davis* v. *Kirkland,* ante, 5, that it is the exclusive province of the jury to determine all disputed issues of fact, there are really only two questions suggested which require any determination on our part. In the first place, was the loss of the "option" sufficiently shown to authorize the introduction of parol evidence as to its contents? And secondly, was the mem-

bership of D. C. Stricklin in the partnership of Stricklin & Company sufficiently shown? With reference to the first question it appeared from the evidence that Crawley & Ellington had taken an option, in writing, on the Coleman property. The option was in the possession of Ellington and in his safe. Crawley testified that he made a written transfer of his two-thirds interest to Stricklin & Ellington and turned the paper over to Ellington. Ellington testified that he put it in his safe, that it was in writing, that it was transferred to himself and Stricklin in writing and was placed in his safe in his private drawer some seven years ago. He further testified that he had made search for it and it was not to be found. This showing was made to the court, who thereafter allowed testimony as to the contents of the option or writing to be delivered; and we are not prepared to say that this was error. We think the foundation was sufficiently laid for the admission of parol evidence as to the contents of the lost paper. It is insisted by plaintiff in error that the original option and transfer should have been tendered in evidence, and if not, a certified copy from the record, and if it was not recorded, that parol evidence would have been admissible, but the parol evidence must have shown all the essentials of a legal document. This, plaintiffs insist, it failed to do, as the evidence did not show any right or title in the parties giving the option or a sufficient description of the property, or any attestation by witnesses. We think the evidence establishes a full description of the property to be conveyed, both realty and personalty, and of the right of Coleman & Wilson to sell; for they are shown to have been in possession, and that the maker of the draft was acquainted with the character and extent of that possession. An option, being merely an agreement (upon compliance with certain conditions) to sell and properly convey the property therein described, does not necessarily require attestation. A bond for title is valid without attestation, though it can not be recorded unless it be attested as prescribed by law. The second error insisted upon is, that the plaintiff should have been required to prove that D. C. Stricklin was a partner of Stricklin & Company. As we have already stated, the defendant's plea was not under oath. The draft being an unconditional contract in writing, the plea must have been under oath before the burden was shifted. Civil Code, §5655. And as to partnership, "partners

suing or being sued in their firm name, the partnership need not be proved unless denied by the defendant, upon oath, on plea in abatement filed." Civil Code, §2637; *Henderson Warehouse Co. v. Brand,* 105 *Ga.* 221. Under the above-recited section of the code, it is not necessary, where partners are sued in their firm name, that the partnership should be proved unless denied on oath by a plea in abatement. "In the absence of such it is too late after the verdict for him to complain, and the verdict can not be set aside on this ground." Under the ruling in *Martin* v. *Lamb,* 77 *Ga.* 252 (3), it was the duty of the defendant, D. C. Stricklin, to show, if he could, that he was not a member of the firm of Stricklin & Company and that his wife was. On the contrary we think several circumstances shown by the evidence would have fully authorized the jury to believe that he was a partner. The evidence showed that he drew the draft, that it was drawn as from Micanopy, Florida, and that he stated to Ellington that he had two places in Florida, etc. But, however this may be, it was incumbent upon the defendant in the court below to have established the fact of the partnership, inasmuch as his plea was not verified as provided by law. The plea in this case was not verified at all, and certainly, therefore, could be in no better condition than one verified to the best of one's knowledge and belief; and in 77 *Ga.* above cited, it was held that "a plea of non-partnership, sworn to by the defendant to the best of his knowledge and belief, does not cast the onus upon the plaintiffs, but only entitles the defendant to go the jury and establish his defense." Upon the subject of consideration the testimony was conflicting, but it does not appear that plaintiff in error did not have an opportunity of getting all that he bargained for. It is undisputed that the plaintiff in error and one Ellington had an option on the Coleman turpentine place, originally for thirty days, which then had more than twenty days to run, at the price of twenty-three thousand dollars; that they paid one hundred dollars for their option. Stricklin agreed to buy a half interest in the place at twenty-eight thousand dollars as the price for the whole. If the jury believed the testimony of Crawley, Ellington, and Sharpe, the property to be conveyed was fully described and included the land making up the Coleman turpentine place on the Satilla River in Ware county, it included the leases, and the horses and mules, wagons and

harness, and commissary stock.   And as the contents of the option were admitted by the defendant in the court below to be known to him, the jury were fully authorized in finding that, had he complied with the terms of the purchase, he could have obtained the property he contracted for.   All these issues of fact having been fairly submitted to the jury, who are the only chemists in a case of facts, the court, being satisfied with the verdict, was right in refusing to invade their province by granting a new trial.   The judge, as a juror, might or might not have found a different verdict; and so might this court in some cases, if empaneled as jurors, have refused to find some verdicts which we are not empowered to set aside.   The operation of a jury trial may be likened to that of a weighing, sorting, mixing, and registering machine so delicately adjusted that it attracts every molecule of evidence and is responsive to every pulsation of the truth, while in turn it is responsible to the law to separate fact from fiction, and correctly registers its verdict on the dial.   By the terms of its creation the Court of Appeals is a court for the correction of errors in law and in equity only.   It has no jurisdiction whatever to consider errors of fact.                *Judgment affirmed.*