Linwood Lee SHIELDS, Defendant
below, Appellant,

v.

STATE of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 13, 1976.

Decided May 13, 1977.

Merritt Burke, III, Deputy Atty. Gen. and Henley Graves, Asst. Deputy Atty. Gen., Georgetown, for plaintiff below, appellee.

George F. Gardner, III, and John Williams, of Schmittinger & Rodriguez, P. A., Dover, and James A. Fuqua, Jr., of Ennis & Fuqua, Georgetown, for defendant below, appellant.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice:

This appeal from convictions of murder in the first degree [11 *Del.C.* § 636(a)(2)] [1] and

---

1. 11 *Del.C.* § 636 provided:

"§ 636. Murder in the first degree; class A felony.

"(a) A person is guilty of murder in the first degree when:

"(1) He intentionally causes the death of another person;

"(2) In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person;

"(3) He intentionally causes another person to commit suicide by force or duress;

"(4) He recklessly causes the death of a law-enforcement officer, corrections employee or fireman while such officer is in the lawful performance of his duties;

"(5) He causes the death of another person by the use of or detonation of any bomb or similar destructive device;

"(6) He, with criminal negligence, causes the death of another person in the course of and in furtherance of the commission or attempted commission of rape, kidnapping, arson in the first degree, robbery in the first degree, or immediate flight therefrom;

"(7) He causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction.

"(b) Murder in the first degree is a class A felony and shall be punished as provided in § 4209 of this title."

And § 4209 provided:

"§ 4209. Method and punishment for first degree murder.

"(a) In any case in which a person is convicted of first degree murder the court shall impose a sentence of death. If the penalty of death is determined to be unconstitutional the penalty for first degree murder shall be life imprisonment without benefit of parole.

rape [11 *Del.C.* § 763] raises numerous issues, primarily the issue of the authority of a Deputy Attorney General to withdraw his offer of a plea bargain after it was accepted by the defendant.

## I.

The defendant was indicted for first degree murder and rape. Some time before trial, the Deputy Attorney General in charge of the case and defense counsel negotiated a plea bargain under which the defendant would enter guilty pleas to murder in the second degree [11 *Del.C.* § 635][2] and rape; and upon the entry of such guilty pleas and sentences thereon, the State would enter a nolle prosequi dismissing the first degree murder charge. The offer was documented by the Deputy Attorney General and, several days later, defense counsel communicated the defendant's acceptance of the offer.

Several weeks later and prior to the entry of a plea by the defendant, for reasons "never delineated in writing to the defendant or his counsel" (or made clear to this Court), the Deputy Attorney General orally advised counsel that the State was unilaterally withdrawing from the plea bargain agreement. The defendant took the position that the State was obligated to perform the plea bargain agreement.

Prior to the plea bargain negotiations, the defendant had filed the following motions: (1) to quash the indictment because prejudicial publicity made a fair and impartial trial in Delaware impossible; (2) to quash the first degree murder count of the indictment because the governing Statutes providing for capital punishment were unconstitutional; and (3) for change of venue. Motions were also filed relating to the defense of insanity and for discovery and inspection.

Following the State's withdrawal from the plea bargain, the defendant moved (1) for specific performance of the plea bargain agreement; (2) to suppress all oral statements and a written statement taken from the defendant and any evidence derived therefrom; (3) to suppress evidence allegedly utilized to elicit the said statements and to connect the defendant to the crime.

Prior to trial, the Superior Court denied the motions for specific performance of the plea bargain, for dismissal of the indictment, for change of venue, and for suppression.

The jury found the defendant guilty as charged and, after denial of post-trial motions, the defendant was sentenced to death for first degree murder and life imprisonment for rape. A stay of execution was issued pending this appeal.

Any other facts necessary to state will be set forth in the portion of this opinion to which they relate.

## II.

The defendant contends that the Trial Court erred in denying the motion for specific performance of the plea bargain agreement. He insists that the State should have been, and should still be, obliged to

"(b) The imposition of a sentence of death shall be upon such terms and conditions as the court may impose in its sentence, including the place, the number of witnesses and conditions of privacy. Punishment of death shall, in all cases, be inflicted by hanging by the neck, and the carrying out of such sentence may not be less than 10 days after the imposition of the sentence. The court or the Governor may suspend the execution of the sentence until a later date to be specified, solely to permit completion of the process of judicial review of said conviction."

**2.** 11 *Del.C.* § 635 provided:
"§ 635. Murder in the second degree; class A felony.

"A person is guilty of murder in the second degree when:
"(1) He recklessly causes the death of another person under circumstances which manifest a cruel, wicked, and depraved indifference to human life; or
"(2) In the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, he with criminal negligence, causes the death of another person."
For second degree murder, life imprisonment was the mandatory penalty 11 *Del.C.* § 4205(b).

honor the plea bargain offered by it and accepted by the defendant.[3]

The defendant asserts various theories in support of his contention that the plea bargain agreement should be specifically enforced. Basically, the defendant's arguments rest on theories of (1) breach of contract, and (2) breach of the pledge of public faith by the prosecutor. While the defendant cites cases based on one or both of those theories, in which relief was provided for a broken plea bargain agreement, each case is distinguishable from the instant case in one controlling aspect—the element of reliance.

The defendant acknowledges the importance of "reliance" in this connection:

"Like the contract theory for upholding plea bargains, the pledge of public faith rationale also relies upon the element of detrimental reliance by the criminally accused as a basis for granting specific performance of the plea bargain. . . ."

The case law throughout emphasizes the requisite of reliance. For example, in *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court recognized that specific performance may be available as the remedy for a broken plea bargain agreement; the agreement in that case, however, was breached by the prosecution after the defendant had pleaded guilty to a lesser-included offense in reliance upon the prosecutor's promise not to make a sentencing recommendation.[4] Indeed, in all cases which

have come to our attention, affording relief for breach by the prosecution of a plea bargain, the sequence of events has been (1) reliance, and (2) breach. See *United States v. Paiva,* 294 F.Supp. 742 (D.D.C.1969) (defendant pleaded guilty and furnished information in exchange for the promise of dismissal of remaining charges); *State v. Wolske,* 280 Minn. 465, 160 N.W.2d 146 (1968) (defendant pleaded guilty in reliance upon prosecutor's promise to dismiss other charges); *State v. Thomas,* 61 N.J. 314, 294 A.2d 57 (1972) (defendant pleaded guilty in exchange for promise of dismissal of remaining charges). See also *State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *State v. Hingle,* 242 La. 844, 139 So.2d 205 (1962).

Two Delaware decisions bearing on the question of broken plea bargains emphasize the factor of reliance: *Hinckle v. State,* Del.Supr., 189 A.2d 432 (1963) and *Hamilton v. State,* Del.Supr., 285 A.2d 807 (1971). In *Hinckle,* the defendant was indicted for a felony which carried a maximum sentence of 3 years. Pursuant to an agreement with the State, the defendant pleaded guilty to a lesser-included offense carrying an indeterminate sentence. The Trial Court, however, summarily disregarded the agreement and imposed a 7 year prison sentence. This Court found such refusal to consider the agreement, after reliance thereon by the defendant, an abuse of discretion. 189 A.2d at 435. In *Hamilton,*[5] too, this Court de-

---

**3.** Although no longer exposed to the death sentence for first degree murder because of the unconstitutionality of capital punishment under § 4209(a), a conviction for that offense mandates life imprisonment without the benefit of parole. See *State v. Spence,* Del.Supr., 367 A.2d 983 (1976). A life imprisonment sentence on a second degree murder conviction under the plea bargain, on the other hand, would carry the benefit of parole. 11 *Del.C.* §§ 635 and 4205(b).

**4.** As one commentator has noted: "In general, the emphasis of the courts appears to focus more on the degree of reliance exhibited by the accused than on the authority of the promisor." Note, the Legitimation of Plea Bargaining: Remedies for Broken Promises, 11 *Am.Cr.L. Rev.* 771, 784 (1973) citing *Santobello v. New*

*York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**5.** *Santobello v. New York, supra,* decided four days after this Court ruled in *Hamilton,* goes beyond the mere requirement of judicial consideration of the agreement:

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration such a promise must be fulfilled. . . .

\* \* \* \* \* \*

"The ultimate relief to which petitioner is entitled we leave to the discretion of the State court which is in a better position to decide whether the circumstances of this case require only that there be specific per-

clined to permit a defendant to be deprived of the benefit of a plea bargain agreement upon which he had relied in entering a guilty plea.

The defendant contends that the State obtained valuable information from him by reason of the plea agreement; yet, the defendant never specifies what information was revealed or valuable constitutional right relinquished. Such abstract contentions are insufficient to support this ground. Compare *United States v. Paiva, supra* (defendant identified the specific bonds he had forged); and *People v. Prado,* 81 Misc.2d 710, 365 N.Y.S.2d 943 (1975) (defendant stipulated that if he passed polygraph test he would be released on his own recognizance, but if he failed the results of the test would be admissible in court).

■ We hold that the State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement.

■ In the instant case, there is no showing that the defendant entered a plea or took any other action constituting detrimental reliance upon the plea bargain. Accordingly, there was no error in the Trial Court's denial of specific performance of the agreement.

### III.

The defendant contends that Superior Court Criminal Rule 24(b)[6] is unconstitutional in that it requires the defendant to exercise all of his peremptory challenges to the jury before the State must challenge any, thus affording the State a double opportunity to challenge in violation of fundamental fairness. The defendant suggests rotation as a more fair procedure, but offers no authority condemning the Rule 24(b).

■ Peremptory challenges are privileges which are subject to reasonable regulation as to the manner of their exercise. See *Stilson v. United States,* 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919); *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). While the idea of rotation of peremptory challenges may commend itself for future rule-making consideration, we cannot say that the time-honored procedures prescribed by Rule 24(b) are unreasonable.

### IV.

#### A.

During the trial, and over the objection of the defendant, a police lieutenant and a police corporal sat with the prosecutor during the selection of the jury and assisted him in the process. These officers were the chief police investigators and principal witnesses for the State.

■ There is no showing of actual or inherent prejudice in the action of the police witnesses in this case. We conclude, therefore, that there was no denial of due process or reversible error by reason of the Trial Court's rejection of the motion addressed to this situation which, we understand, has been permitted frequently in the past.

■ For future reference, however, it is announced that the practice of permitting police witnesses to assist in jury selection is disapproved. The practice tends to ingratiate the police witnesses in the eyes of the jury; and such apparent association with the "convening" of the Trial Court tends to enhance unfairly the credibility of the po-

---

formance of the agreement . . . or [granting the defendant] the opportunity to withdraw his plea of guilty." 404 U.S. at 262–63, 92 S.Ct. at 499.

6. Superior Court Criminal Rule 24(b) provides: "(b) PEREMPTORY CHALLENGES: In capital cases the State shall be entitled to 12 peremptory challenges and the defendant or defendants shall be entitled to a total of 20 peremptory challenges. In capital cases, the right to challenge shall be exercised against each juror immediately upon conclusion of examination of such juror and the defendant or defendants shall exercise or refuse to exercise the right to challenge before the State is called upon to do so."

lice witnesses and denigrate that of defense witnesses. See *Bailey v. State*, Del.Supr., 363 A.2d 312, 316–17 (1976).

## B.

■ The defendant also complains that the Trial Court refused to sequester the two police officers and to require them to testify first in the State's case, in accordance with *Grace v. State*, Del.Supr., 314 A.2d 169 (1973). On the record before us, we find no abuse of discretion in violation of *Grace* as to either the sequestration or the order of proceeding.

## V.

As other grounds of appeal, the defendant asserts:

■ (1) That the Trial Court erred in denying the defendant's motion for change of venue. As to this ground, we find no abuse of discretion. *Parson v. State*, Del. Supr., 222 A.2d 326 (1966).

■ (2) That the Trial Court erred in admitting into evidence certain documentary and physical evidence seized during an allegedly invalid consent search. As to this ground, under the totality of the circumstances on the record before us, we find no reversible error. *Schneckloth v. Busta-monte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); c. f., *State v. Herhal*, Del.Super., 307 A.2d 553 (1973).

■ (3) That the Trial Court denied defendant due process in that the *voir dire* examination of jurors did not meet the essential demands of fairness. As to this ground, we find no abuse of discretion by the Trial Court. *Parson v. State*, Del.Supr., 275 A.2d 777 (1971); *McCoy v. State*, Del. Supr., 361 A.2d 241 (1976).

■ (4) That the Trial Court erred in admitting State's evidence and prosecutor's remarks to the jury regarding character and reputation of the victim in this rape case. We find no reversible error as to this ground.

■ (5) That the Trial Court erred in refusing to declare a mistrial when State witness testified that defendant had been the subject of prior investigation and was suspected of other similar offenses. We find that this statement was volunteered by the witness and was sufficiently cured by cautionary instruction to the jury. *Johnson v. State*, Del.Supr., 311 A.2d 873 (1973).

(6) That the Trial Judge committed error in admitting into evidence certain maps. We conclude that if error, it is not reversible error.

■ (7) That the Trial Court erred in permitting the principal police officers to testify a second time during the State's case in chief. We find no abuse of judicial discretion here. C. f., *Pepe v. State*, 3 Storey 417, 53 Del. 417, 171 A.2d 216 (1961).

## VI.

■ The defendant attacks the constitutionality of 11 *Del.C.* § 4209, the governing Statute providing for capital punishment in first degree murder cases at the time of this offense.

This question has been settled by this Court in *State v. Spence*, Del.Supr., 367 A.2d 983 (1976). Under that decision, the death sentence imposed upon this defendant must be set aside and a sentence of life imprisonment without benefit of parole must be imposed upon him.

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, the judgment below is affirmed, except that the cause is remanded with instructions to strike the death sentence imposed upon the murder charge and to substitute in lieu thereof a sentence of life imprisonment without benefit of parole.